1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11                                  ----oo0oo----

12   ROBERT ANDERSON, an individual,      CIV. NO. 2:13-1328 WBS CKD
     and SAXON CREED MOTORCYCLE
13   CLUB, an unincorporated              MEMORANDUM AND ORDER RE:
     association,                         MOTION TO DISMISS
14
                    Plaintiffs,
15
           v.
16
     CITY OF RIO VISTA, RIO VISTA
17   POLICE DEPARTMENT, CHIEF OF
     POLICE GREG BOWMAN, and DOES 1-
18   10 in their individual
     capacities,
19
                    Defendants.
20

21

22                                  ----oo0oo----

23          Plaintiff Robert Anderson is the president of plaintiff

24   Saxon Creed Motorcycle Club ("Saxon Creed"), an unincorporated

25   fraternal association.  (Compl. ¶¶ 4-5 (Docket No. 1).)  On July

26   7, 2012, Saxon Creed intended to host a day-long event at

27   Blackwelders Park, a privately owned park in the City of Rio

28   Vista.  The event was to include a "pig roast, with live music,

                                      1

1  dancing and dinner." (Id. ¶¶ 12-13.)  Approximately one month

2  before the anticipated event, a member of Saxon Creed applied for

3  the necessary Temporary Use Permit ("TUP") with the City of Rio

4  Vista.  (Id. ¶ 12.)

5        Five days before the event, a notice from the Rio Vista

6  Chief of Police, defendant Greg Bowman, informed Saxon Creed that

7  its application for a TUP was denied.  (Id. ¶ 14.)  The notice

8  indicated that the TUP was denied pursuant to Rio Vista Municipal

9  Code section 17.44.020 and stated that the decision was based

10  "primarily on the application provided to the [City], the lack of

11  timeliness in submitted required documents, and in part based on

12  false and/or misleading information provided . . . during the

13  hearing." (Id.)

14        On July 2, 2013, plaintiffs initiated this action

15  against Bowman, the City of Rio Vista, and the City of Rio Vista

16  Police Department, alleging 1) a 42 U.S.C. § 1983 claim asserting

17  a First Amendment facial challenge to Rio Vista Municipal Code

18  section 17.44.020; 2) a § 1983 claim asserting that defendants'

19  denial of the TUP violated plaintiffs' First Amendment right of

20  association; and 3) a free speech claim under the California

21  Constitution.  Defendants now move to dismiss the complaint in

22  its entirety for lack of subject matter jurisdiction pursuant to

23  Federal Rule of Civil Procedure 12(b)(1) and for failure to state

24  a claim upon which relief can be granted pursuant to Rule

25  12(b)(6).  In their opposition to defendants' motion, plaintiffs

26  indicate that they voluntarily dismiss their third claim under

27  the California Constitution, and thus the court will dismiss that

28  claim.

1  II.  Analysis

2         On a motion to dismiss under Rule 12(b)(6), the court

3  must accept the allegations in the complaint as true and draw all

4  reasonable inferences in favor of the plaintiff.  Scheuer v.

5  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

6  Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S.

7  319, 322 (1972).  To survive a motion to dismiss, a plaintiff

8  needs to plead "only enough facts to state a claim to relief that

9  is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

10  544, 570 (2007).  This "plausibility standard," however, "asks

11  for more than a sheer possibility that a defendant has acted

12  unlawfully," and where a complaint pleads facts that are "merely

13  consistent with" a defendant's liability, it "stops short of the

14  line between possibility and plausibility."  Ashcroft v. Iqbal,

15  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).

16         In relevant part, § 1983 provides:

17         Every  person  who,  under  color  of  any  statute,
        ordinance,  regulation,  custom,  or  usage,  of  any State
18         . . . ,  subjects,  or  causes  to  be  subjected,  any
        citizen  of  the  United  States . . . to  the  deprivation
19         of  any  rights,  privileges,  or  immunities  secured  by
        the  Constitution  and  laws,  shall  be  liable  to  the
20         party  injured  in  an  action  at  law,  suit  in  equity  or
        other  proper  proceeding  for  redress . . . .

21

22  42 U.S.C. § 1983.  While § 1983 is not itself a source of

23  substantive rights, it provides a cause of action against any

24  person who, under color of state law, deprives an individual of

25  federal constitutional rights or limited federal statutory

26  rights.  Id.; Graham v. Connor, 490 U.S. 386, 393-94 (1989).

27  Here, plaintiffs allege violations of their First Amendment

28  rights.

3

1    "While the First Amendment does not in terms protect a

2  'right of association,' [Supreme Court] cases have recognized

3  that it embraces such a right in certain circumstances." City of

4  Dallas v. Stanglin, 490 U.S. 19, 23-24 (1989).  In Stanglin,

5  however, the Court "circumscribed the scope of associational

6  liberties protected by the first amendment." Conti v. City of

7  Fremont, 919 F.2d 1385, 1388 (9th Cir. 1990).  There, plaintiffs

8  challenged a city ordinance that restricted admission to teenage

9  dance halls to individuals between fourteen and eighteen years

10  old.  Stanglin, 490 U.S. at 20.  Plaintiffs argued, and the Court

11  of Appeals had held, that the ordinance "violated the First

12  Amendment right of persons between the ages of 14 and 18 to

13  associate with persons outside that age group."  Id.

14    The Court explained that First Amendment protection

15  extends to "two different sorts of 'freedom of association'": 1)

16  "'choices to enter into and maintain certain intimate human

17  relationships'"; and 2) "'a right to associate for the purpose of

18  engaging in those activities protected by the First Amendment--

19  speech, assembly, petition for the redress of grievances, and the

20  exercise of religion.'"  Id. at 24 (quoting Roberts v. U.S.

21  Jaycees, 468 U.S. 609, 617-18 (1984)).  There was no claim in

22  Stanglin, just as there is no claim in the present case, that any

23  intimate human relationships are involved.

24    Examining the latter category, Court in Stanglin

25  explained that, while the opportunities of "adults to dance with

26  minors . . . might be described as 'associational' in common

27  parlance, []  they simply do not involve the sort of expressive

28  association that the First Amendment has been held to protect."

4

1    <u>Id.</u>   The Court clarified that the Constitution does not recognize

2    "a generalized right of 'social association'" and consequently

3    held that plaintiffs did not have a cognizable claim under the

4    First Amendment.   <u>Id.</u> at 25.

5          In rejecting the claim, the <u>Stanglin</u> Court emphasized

6    that the teenagers who visited the dance halls were "not members

7    of any organized association."   <u>Id.</u> at 24.  Here, on the other

8    hand, the Complaint alleges that Saxon Creed "is an

9    unincorporated fraternal association."   (Compl. ¶ 5.)

10   Nonetheless, as the Supreme Court made clear in <u>Boy Scouts of</u>

11   <u>America v. Dale</u>, 530 U.S. 640 (2000), the existence of an

12   organized association alone does not raise a claim to

13   constitutional dimensions:

14          To determine whether a group is protected by the First
           Amendment's expressive associational right, <u>we must</u>
15         <u>determine whether the group engages in "expressive</u>
           <u>association</u>."   The First Amendment's protection of
16         expressive association is not reserved for advocacy
           groups. But to come within its ambit, <u>a group must</u>
17         <u>engage in some form of expression</u>, whether it be
           public or private.
18

19   <u>Boy Scouts of Am.</u>, 530 U.S. at 648 (emphasis added); <u>see also</u>

20   <u>Salvation Army v. N.J. Dep't of Cmty. Affairs</u>, 919 F.2d 183, 199

21   (3d Cir. 1990) ("[T]here is no constitutional right to associate

22   for a purpose that is not protected by the First Amendment.").

23   In <u>Boy Scouts of America</u>, the Court relied on the Boy Scouts'

24   mission statement, Scout Oath and Law, and efforts to instill its

25   values on its members to conclude that the Boy Scouts "transmit a

26   system of values" and therefore engage in expressive association

27   subject to protection under the First Amendment.   <u>Boy Scouts of</u>

28   <u>Am.</u>, 530 U.S. at 649-50.

                                    5

1    Here, however, the Complaint alleges only that Saxon

2 Creed "is an unincorporated fraternal association" and that the

3 TUP "stated that the event was to be a pig roast, with live

4 music, dancing, and dinner." (Compl. ¶¶ 5, 13.)  The Complaint

5 lacks a single allegation even suggesting that Saxon Creed sought

6 to hold the event in question in order to engage in some form of

7 expressive association.  To the contrary, the only plausible

8 inference the court can draw from the allegations in the

9 Complaint is that the event was intended to be a social gathering

10 akin to the teenage dance halls in Stanglin and thus outside the

11 parameters of the First Amendment.  See Hudson v. City of Los

12 Angeles, Civ. No. 06-942-DSF, 2006 WL 4729243, at *7 (C.D. Cal.

13 Sept. 7, 2006) (rejecting plaintiff's First Amendment claim based

14 on an alleged right of association with motorcycle clubs because

15 plaintiff failed to allege facts showing that the motorcycle

16 clubs engaged in expressive activity); cf. Kohlman v. Village of

17 Midlothian, 833 F. Supp. 2d 922, 939 (N.D. Ill. 2011) (concluding

18 that there was a lack of a triable issue of fact with respect to

19 whether the Hells Angels engaged in expressive activity that

20 implicates the First Amendment).

21    Accordingly, because the Complaint does not allege that

22 Saxon Creed sought to engage in expressive association meriting

23 protection under the First Amendment, plaintiffs lack a

24 cognizable § 1983 claim challenging defendants' denial of the TUP

25 and the court must dismiss that claim.[1]

26 _____

27    [1]   Neither party addresses whether the fact that
plaintiffs sought to hold their event at a private park affects
their First Amendment claim.  The court need not examine this
28 issue to resolve defendants' motion to dismiss.

1    With respect to plaintiffs' facial challenge, the

2    Complaint fails to clearly articulate plaintiffs' theory.  In

3    more of a haphazard fashion, the Complaint appears to toss around

4    constitutional buzzwords amid conclusory allegations to see what

5    might stick.  Although plaintiffs have titled their claim as one

6    under the First Amendment, how plaintiffs' allegations fit any

7    theory under the First Amendment is unclear, and their barebones

8    allegations suggest they might also be alleging violations of

9    rights under the due process or equal protection clauses.[2]

10   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

11   does not need detailed factual allegations, a plaintiff's

12   obligation to provide the 'grounds' of his 'entitle[ment] to

13   relief' requires more than labels and conclusions . . . ."

14   Twombly, 550 U.S. at 555 (alteration in original) (citations

15   omitted).

16   Not only does the ambiguity surrounding the

17   constitutional underpinning of plaintiffs' facial challenge

18   preclude the court from assessing whether plaintiffs have a

19   cognizable claim, it denies defendants of the fair notice Rule 8

20   requires.  See id. (stating that allegations under Rule 8(a)(2)

21   must "'give the defendant fair notice of what the . . . claim is

22   and the grounds upon which it rests'" (quoting Conley v. Gibson,

23   355 U.S. 41, 47, (1957) (omission in original))).  Accordingly,

24   _____

25   [2]    For example, the Complaint alleges that the "terms of"
     section 17.44.020 "are so vague that people of common
26   intelligence must necessarily guess at their meaning and differ
     as to their application."  (Compl. ¶ 18.)  A vagueness challenge
27   "raises a due process, as opposed to First Amendment, claim."
     Hunt v. City of Los Angeles, 638 F.3d 703, 710 (9th Cir. 2011).

28

because plaintiffs' facial challenge is supported only by conclusory and illusory allegations, the court must grant defendants' motion to dismiss that claim.[3]

IT IS THEREFORE ORDERED that defendants' motion to dismiss plaintiffs' Complaint be, and the same hereby is, GRANTED.

Plaintiffs have twenty days from the date this Order is signed to file an amended complaint, if they can do so consistent with this Order.

Dated:  November 20, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[3] Because it is unnecessary for the court to examine section 17.44.020 to resolve defendants' motion to dismiss, the court denies defendants' request that the court take judicial notice of the Rio Vista Municipal Code as moot.  The court also need not address defendants' Rule 12(b)(1) motion, the sufficiency of plaintiffs' Monell claim against the City of Rio Vista and the Rio Vista Police Department, or Bowman's assertion of qualified immunity.