UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROBERT ANDERSON, an individual, and SAXON CREED MOTORCYCLE CLUB, an unincorporated association,<br><br>        Plaintiffs,<br><br>  v.<br><br>CITY OF RIO VISTA, RIO VISTA POLICE DEPARTMENT, CHIEF OF POLICE GREG BOWMAN, and DOES 1-10 in their individual capacities,<br><br>        Defendants. | CIV. NO. 2:13-1328 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

    Plaintiff Robert Anderson is the president of plaintiff Saxon Creed Motorcycle Club ("Saxon Creed"), an unincorporated fraternal association. (Compl. ¶¶ 4-5 (Docket No. 1).) On July 7, 2012, Saxon Creed intended to host a day-long event at Blackwelders Park, a privately owned park in the City of Rio Vista. The event was to include a "pig roast, with live music,

1

dancing and dinner."  (Id. ¶¶ 12-13.)  Approximately one month before the anticipated event, a member of Saxon Creed applied for the necessary Temporary Use Permit ("TUP") with the City of Rio Vista.  (Id. ¶ 12.)

Five days before the event, a notice from the Rio Vista Chief of Police, defendant Greg Bowman, informed Saxon Creed that its application for a TUP was denied.  (Id. ¶ 14.)  The notice indicated that the TUP was denied pursuant to Rio Vista Municipal Code section 17.44.020 and stated that the decision was based "primarily on the application provided to the [City], the lack of timeliness in submitted required documents, and in part based on false and/or misleading information provided . . . during the hearing."  (Id.)

On July 2, 2013, plaintiffs initiated this action against Bowman, the City of Rio Vista, and the City of Rio Vista Police Department, alleging 1) a 42 U.S.C. § 1983 claim asserting a First Amendment facial challenge to Rio Vista Municipal Code section 17.44.020; 2) a § 1983 claim asserting that defendants' denial of the TUP violated plaintiffs' First Amendment right of association; and 3) a free speech claim under the California Constitution.  Defendants now move to dismiss the complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  In their opposition to defendants' motion, plaintiffs indicate that they voluntarily dismiss their third claim under the California Constitution, and thus the court will dismiss that claim.

2

II. <u>Analysis</u>

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556-57).

In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights. <u>Id.</u>; <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). Here, plaintiffs allege violations of their First Amendment rights.

3

1    "While the First Amendment does not in terms protect a
2 'right of association,' [Supreme Court] cases have recognized
3 that it embraces such a right in certain circumstances." City of
4 Dallas v. Stanglin, 490 U.S. 19, 23-24 (1989).  In Stanglin,
5 however, the Court "circumscribed the scope of associational
6 liberties protected by the first amendment." Conti v. City of
7 Fremont, 919 F.2d 1385, 1388 (9th Cir. 1990).  There, plaintiffs
8 challenged a city ordinance that restricted admission to teenage
9 dance halls to individuals between fourteen and eighteen years
10 old.  Stanglin, 490 U.S. at 20.  Plaintiffs argued, and the Court
11 of Appeals had held, that the ordinance "violated the First
12 Amendment right of persons between the ages of 14 and 18 to
13 associate with persons outside that age group." Id.

14    The Court explained that First Amendment protection
15 extends to "two different sorts of 'freedom of association'": 1)
16 "'choices to enter into and maintain certain intimate human
17 relationships'"; and 2) "'a right to associate for the purpose of
18 engaging in those activities protected by the First Amendment--
19 speech, assembly, petition for the redress of grievances, and the
20 exercise of religion.'" Id. at 24 (quoting Roberts v. U.S.
21 Jaycees, 468 U.S. 609, 617-18 (1984)).  There was no claim in
22 Stanglin, just as there is no claim in the present case, that any
23 intimate human relationships are involved.

24    Examining the latter category, Court in Stanglin
25 explained that, while the opportunities of "adults to dance with
26 minors . . . might be described as 'associational' in common
27 parlance, [] they simply do not involve the sort of expressive
28 association that the First Amendment has been held to protect."

4

1  Id.  The Court clarified that the Constitution does not recognize
2  "a generalized right of 'social association'" and consequently
3  held that plaintiffs did not have a cognizable claim under the
4  First Amendment.  Id. at 25.
5  	In rejecting the claim, the Stanglin Court emphasized
6  that the teenagers who visited the dance halls were "not members
7  of any organized association."  Id. at 24.  Here, on the other
8  hand, the Complaint alleges that Saxon Creed "is an
9  unincorporated fraternal association."  (Compl. ¶ 5.)
10 Nonetheless, as the Supreme Court made clear in Boy Scouts of
11 America v. Dale, 530 U.S. 640 (2000), the existence of an
12 organized association alone does not raise a claim to
13 constitutional dimensions:

> To determine whether a group is protected by the First Amendment's expressive associational right, we must determine whether the group engages in "expressive association."  The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private.

19 Boy Scouts of Am., 530 U.S. at 648 (emphasis added); see also
20 Salvation Army v. N.J. Dep't of Cmty. Affairs, 919 F.2d 183, 199
21 (3d Cir. 1990) ("[T]here is no constitutional right to associate
22 for a purpose that is not protected by the First Amendment.").
23 In Boy Scouts of America, the Court relied on the Boy Scouts'
24 mission statement, Scout Oath and Law, and efforts to instill its
25 values on its members to conclude that the Boy Scouts "transmit a
26 system of values" and therefore engage in expressive association
27 subject to protection under the First Amendment.  Boy Scouts of
28 Am., 530 U.S. at 649-50.

Here, however, the Complaint alleges only that Saxon Creed "is an unincorporated fraternal association" and that the TUP "stated that the event was to be a pig roast, with live music, dancing, and dinner." (Compl. ¶¶ 5, 13.) The Complaint lacks a single allegation even suggesting that Saxon Creed sought to hold the event in question in order to engage in some form of expressive association. To the contrary, the only plausible inference the court can draw from the allegations in the Complaint is that the event was intended to be a social gathering akin to the teenage dance halls in Stanglin and thus outside the parameters of the First Amendment. See Hudson v. City of Los Angeles, Civ. No. 06-942-DSF, 2006 WL 4729243, at *7 (C.D. Cal. Sept. 7, 2006) (rejecting plaintiff's First Amendment claim based on an alleged right of association with motorcycle clubs because plaintiff failed to allege facts showing that the motorcycle clubs engaged in expressive activity); cf. Kohlman v. Village of Midlothian, 833 F. Supp. 2d 922, 939 (N.D. Ill. 2011) (concluding that there was a lack of a triable issue of fact with respect to whether the Hells Angels engaged in expressive activity that implicates the First Amendment).

Accordingly, because the Complaint does not allege that Saxon Creed sought to engage in expressive association meriting protection under the First Amendment, plaintiffs lack a cognizable § 1983 claim challenging defendants' denial of the TUP and the court must dismiss that claim.[1]

---

[1] Neither party addresses whether the fact that plaintiffs sought to hold their event at a private park affects their First Amendment claim. The court need not examine this issue to resolve defendants' motion to dismiss.

With respect to plaintiffs' facial challenge, the Complaint fails to clearly articulate plaintiffs' theory. In more of a haphazard fashion, the Complaint appears to toss around constitutional buzzwords amid conclusory allegations to see what might stick. Although plaintiffs have titled their claim as one under the First Amendment, how plaintiffs' allegations fit any theory under the First Amendment is unclear, and their barebones allegations suggest they might also be alleging violations of rights under the due process or equal protection clauses.[2] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." Twombly, 550 U.S. at 555 (alteration in original) (citations omitted).

Not only does the ambiguity surrounding the constitutional underpinning of plaintiffs' facial challenge preclude the court from assessing whether plaintiffs have a cognizable claim, it denies defendants of the fair notice Rule 8 requires. See id. (stating that allegations under Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957) (omission in original))). Accordingly,

---

[2] For example, the Complaint alleges that the "terms of" section 17.44.020 "are so vague that people of common intelligence must necessarily guess at their meaning and differ as to their application." (Compl. ¶ 18.) A vagueness challenge "raises a due process, as opposed to First Amendment, claim." Hunt v. City of Los Angeles, 638 F.3d 703, 710 (9th Cir. 2011).

7

because plaintiffs' facial challenge is supported only by conclusory and illusory allegations, the court must grant defendants' motion to dismiss that claim.[3]

IT IS THEREFORE ORDERED that defendants' motion to dismiss plaintiffs' Complaint be, and the same hereby is, GRANTED.

Plaintiffs have twenty days from the date this Order is signed to file an amended complaint, if they can do so consistent with this Order.

Dated:  November 20, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[3] Because it is unnecessary for the court to examine section 17.44.020 to resolve defendants' motion to dismiss, the court denies defendants' request that the court take judicial notice of the Rio Vista Municipal Code as moot.  The court also need not address defendants' Rule 12(b)(1) motion, the sufficiency of plaintiffs' Monell claim against the City of Rio Vista and the Rio Vista Police Department, or Bowman's assertion of qualified immunity.