**JOSEPH J. WISEMAN, ESQ., CSBN 107403**
**JENNIFER C. NOBLE, ESQ., CSBN**
**WISEMAN LAW GROUP, P.C.**
  1477 Drew Avenue, Suite 106
  Davis, California 95618
  Telephone:     530.759.0700
  Facsimile:     530.759.0800

Attorneys for Plaintiffs
ROBERT ANDERSON, and
SAXON CREED MOTORCYCLE CLUB

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ANDERSON, an individual, and SAXON CREED MOTORCYCLE CLUB, an unincorporated fraternal association,<br><br>                Plaintiffs,<br>        v.<br><br>CITY OF RIO VISTA, RIO VISTA POLICE DEPARTMENT, CHIEF OF POLICE GREG BOWMAN, and DOES 1-10 in their individual capacities,<br><br>                Defendants. | Case No. 2:13-cv-01328-WBS-CKD<br><br>**AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND INJUNCTIVE RELIEF**<br><br>**(JURY TRIAL DEMAND)** |

## INTRODUCTION

1.     This is an action for damages and injunctive relief arising out of the illegal denial of Plaintiffs'' application for a Temporary Use Permit, in the City of Rio Vista, Solano County, State of California, by members of the City's Department of Community Development and the Rio Vista Police Department. Plaintiffs are seeking redress under the Constitutions of the United States of America and the State of California, as well as under state statutory law.

/ / / / /

**JURISDICTION**

2. This court has jurisdiction over Plaintiffs" federal civil rights claim pursuant to 28 U.S.C. §§ 1331 (federal question), and 1343(3) (civil rights).

**VENUE**

3. Venue is proper in the Eastern District of California, pursuant to 28 U.S.C. § 1391(b)(2), as all of the acts and omission alleged herein occurred in the County of Solano, which is located within the geographic boundary of the Eastern District of California.

**PARTIES TO THIS ACTION AND THEIR CAPACITIES**

4. Plaintiff ROBERT ANDERSON ("ANDERSON") is an individual who resides in the CITY OF RIO VISTA, and at all times mentioned herein was a member in good standing and the President of the SAXON CREED MOTORCYCLE CLUB.

5. Plaintiff SAXON CREED MOTORCYCLE CLUB ("SCMC") is an unincorporated fraternal association with its principal place of business in the CITY OF RIO VISTA in the State of California.

6. Defendant CITY OF RIO VISTA is a municipal entity organized under the laws of the State of California.

7. Defendant RIO VISTA POLICE DEPARTMENT is a public agency subject to suit.

8. Defendant CHIEF OF POLICE GREG BOWMAN ("BOWMAN") is a law enforcement officer, and, at all times mentioned herein, was employed by the CITY OF RIO VISTA and the RIO VISTA POLICE DEPARTMENT. In doing the acts alleged herein, Defendant BOWMAN was acting within the course and scope of his employment and under color of state law; however, he is being sued herein in his individual capacity.

9. Plaintiffs are informed and believe, and thereupon allege, that numerous other employees and/or agents of the CITY OF RIO VISTA and the RIO VISTA DEPARTMENT, acting under color of state law, assisted, aided and abetted Defendant

BOWMAN in undertaking the acts alleged herein, and, therefore, are also responsible or liable for the civil rights violations alleged herein. Plaintiffs are presently unaware of the identities of these DOE employees, agents, aiders and abettors, and will seek leave to amend this complaint when their identities are determined.

## GENERAL ALLEGATIONS ON CUSTOM, POLICY AND PRACTICE

10.     Plaintiffs are informed and believe, and thereupon allege, that Defendants CITY OF RIO VISTA and the RIO VISTA POLICE DEPARTMENT, with deliberate indifference, gross negligence, and reckless disregard of and to the constitutional and statutory rights of Plaintiffs, a fraternal motorcycle club, and all persons and entities similarly situated as such, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages of, among other things:

   a.     Selecting, retaining, and assigning employees with demonstrable propensities for violating the civil rights of citizens, which included but was not limited to, improperly, illegally, and without just cause denying certain individuals and organizations permits to hold charitable and other events at locations within the CITY OF RIO VISTA that are open to the public;

   b.     Failing to adequately discipline officers involved in violating the civil rights of citizens, and engaging in other misconduct impacting those rights, including but not limited to fabricating reasons why certain individuals and organizations are not eligible to obtain Temporary Use Permits to hold events in places ordinarily open to the public; and

   c.     Condoning and encouraging CITY OF RIO VISTA police officers in the belief that they can violate the rights of citizens with impunity, and that such conduct will not adversely affect the officers' opportunities for promotion and other employment benefits.

11.     Plaintiffs are informed and believe, and thereupon allege, that Defendants CITY OF RIO VISTA, and the RIO VISTA POLICE DEPARTMENT ordered, authorized, acquiesced in, tolerated, permitted or maintained policies, practices, customs and

usages permitting the other Defendants named herein to engage in the unlawful and unconstitutional acts and omissions set forth in the foregoing paragraphs. Defendants' conduct, as alleged herein, of routinely denying Temporary Use Permits to certain individuals and organizations such as motorcycle clubs constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants, or on their deliberate indifference, gross negligence, or reckless disregard of and to Plaintiffs' civil rights guaranteed to them by the constitutions of the United States and the State of California. Unless said Defendants are enjoined by this court from permitting or otherwise maintaining such custom and usage, Plaintiffs and other citizens of the CITY OF RIO VISTA will be subject to having their civil rights violated by said Defendants.

**FACTS RELEVANT TO ALL CLAIMS FOR RELIEF**

12. The SAXON CREED MOTORCYCLE CLUB ("SCMC") is a fraternal organization motorcycle club with approximately 20 members and two chapters, Napa/Solano and Sacramento. The SCMC has five officers: President, Vice President, Sergeant at Arms, Secretary, and Treasurer, and its members meet semi-monthly. The primary purpose of the club is to promote motorcycle riding, and develop a fraternal bond among the members, who, according to the club's Bylaws, can only be male.

13. The SCMC also exists to promote the rights of motorcycle riders in this state and nationally. The SCMC is a member of the Northern California Confederation of Clubs, an umbrella organization for numerous, independent motorcycle clubs. According to its website, www.norcalcoc.com, the Northern California Confederation of Clubs "brings together local Motorcycle Clubs, State and National Motorcycle Rights Organizations for the purposes of exchanging information, education, local community charitable activities, local motorcycle related events and **legislative and judiciary strategy and planning**." The various motorcycle clubs that belong to the Northern California Confederation of Clubs coordinate the timing of their individual club events to avoid overlapping schedules, which permits individual club members the opportunity to attend other clubs' events.

14. The SCMC is also affiliated with Bikers Rights Organization of California ("BRO"), a 501(c)(3) non-profit that is "a **politically active group that is consistently searching for and striving to change unfair legislations and discriminatory practices that affect the lifestyle of today's modern rider**," and recently produced 10,000 fliers, sent out to Northern California communities, raising awareness of impending legislation regarding bikers' rights. The SCMC and the other clubs affiliated with BRO are particularly concerned about legislation being considered by California lawmakers that would prohibit lane-splitting and lane-sharing, make it illegal to ride in groups of 3 or more on any freeway in the state, make the current helmet laws more restrictive, and require florescent paint on rider's "patches" to enable enforcement to identify the riders club affiliation at night.

15. At the semimonthly SCMC meetings, members routinely discuss the status of proposed legislation they feel discriminates against motorcycle riders, and relate their personal experience with law enforcement officers in order to document a pattern and practice of discriminatory enforcement. They also discuss and plan club-sponsored events designed to raise money to support the SCMC, support other motorcycle clubs, and support the advocacy organizations of which the SCMC is affiliated.

16. Members of the SCMC routinely attend motorcycle support events, such as the Awareness Rally, an annual multi-club protest against discriminatory biker laws held at the California State Capital, and BRO events designed to raise public awareness of motorcycle clubs and raise money for biker advocacy. Members of the SCMC also participate in an annual Christmas Run, designed to raising money and acquire toys for underprivileged children.

17. On or about June 6, 2012, a member in good standing of the SAXON CREED MOTORCYCLE CLUB ("SCMC"), applied for a Temporary Use Permit ("TUP") with the CITY OF RIO VISTA in accordance with the applicable provisions of the Rio

Vista Municipal Code. The permit was sought for a SCMC event to be held at the privately owned Blackwelders Park located in the CITY OF RIO VISTA on July 7, 2012.

18. Plaintiffs are informed and believe, and thereupon allege that the CITY OF RIO VISTA routinely allowed other organizations hold events at Blackwelders Park without requiring these organizations to obtain a TUP.

19. The SCMC event on July 7, 2012 was to be the club's first annual event, and was timed to permit members of other local motorcycle clubs to attend. The event was to be open to the public as well. **The event was intended to be a forum for the biker attendees to discuss the legislation then being considered by state lawmakers that adversely affected motorcycle riders in general, to inform the public about these proposed discriminatory laws, to educate the public about the SCMC's charitable activities, to inform the public that the SCMC was not a criminal biker gang, and to encourage the public to support bikers' rights**.

20. The SCMC intended to donate part of the entrance fee that it collected to various biker advocacy groups to which it was affiliated.

21. The Temporary Use Permit application for the July 7, 2012 event stated that the SCMC event was to be a pig roast, with live music, dancing and dinner. The event was intended to take place on July 7, 2012, from 10 a.m. to 10 p.m., although the application stated that some of the tear down might take place the next day. The SCMC intended to collect a $20 entrance fee, and intended to provide its own garbage and recycling receptacles, water, and electricity. No alcohol would be brought into the event, and alcohol would not be included in the admission price. The application also stated the SCMC would have individuals checking IDs, with separate wristbands for over- and under-aged attendees. After submitting the application, Plaintiffs began advertising the upcoming pig roast by, among other things, posting flyers around the CITY OF RIO VISTA.

22. On July 2, 2012, five days before the scheduled event, the SCMC received notice from the Defendant BOWMAN that its permit request was denied. The notice stated that the permit was denied under Rio Vista Municipal Code section 17.44.020, which allows the City to regulate events on private property when the event may adversely impact surrounding properties or traffic or parking access. The denial notice stated that the decision was based "primarily on the application provided to the DRC, the lack of timeliness in submitted required documents, and in part based on false and/or misleading information provided by you during the hearing."

23. When ANDERSON attempted to obtain a further explanation from Defendant BOWMAN as to why the SCMC application was denied, and what could be done to correct the alleged deficiencies in order allow the SCMC's event to take place, Defendant BOWMAN responded by threatening to arrest members of the SCMC if they proceeded with the planned event, or engaged in any conduct that violated the Rio Vista Municipal Code, even though Defendant BOWMAN knew or should have know that the denial of the permit was arbitrary, capricious and based on illegal and impermissible reasons.

24. The Rio Vista Municipal Code states in relevant part as follows:

A. Purpose and General Regulations

   1. The purpose of this section is to control and regulate land use activities of a temporary nature, which may adversely affect the public health, safety, and welfare.

      a. The intent is to ensure that temporary uses will be compatible with surrounding land uses, to protect the rights of adjacent residences and land- owners, and to minimize any adverse effects on surrounding properties and the environment.

      d. Temporary use permits are required for activities held on private property for the types of uses listed in subsection B of this section.

   2. General Regulations.

        a. The subject parcel is adequate in size to provide parking and traffic access;

        **b. Approval is required from the building division, fire, police and public works departments;**

        c. Applicant must obtain any other required permits from other agencies.

B. Types of Temporary Uses.

    1. Indoor/Outdoor Festivals, Arts/Craft and Plant Shows, Exhibits. In any business, commercial, office or industrial district, and located on a private property; provided, however, that any such use shall require prior approval of the department of community development subject to the following conditions:

        a. The proposed use will not produce an undue adverse impact on other properties in the vicinity;

        b. At no other time shall materials, merchandise or inventory be stored outdoors;

        c. The display area shall not encroach into any required yard;

        d. Special sales shall not exceed three days in length and shall be limited to six special sales per year;

        e. The site shall be appropriate for the intended use, e.g., to ensure adequate provision will be for traffic circulation, off-street parking, and pedestrian safety;

        f. Noise attenuation for generators and/or other mechanical equipment;

        g. The proposed use will not create substantial or long-term substantive adverse impacts on the surrounding properties.

Rio Vista Municipal Code 17.44.020. Temporary uses. (emphasis added)

    25.    On July 2, 2012, a law enforcement officer employed by the RIO VISTA POLICE DEPARTMENT stated to an employee of the owner of Blackwelder Park that there was a problem with the "group" that was attempting to rent the park, likened the group to a biker gang that would invite the Hells Angels, and concluded by stating that

the CITY OF RIO VISTA and the RIO VISTA POLICE DEPARTMENT were not going to allow SCMC to have their function.

26. The RIO VISTA POLICE DEPARTMENT has shown a pattern, practice and custom of shadowing and harassing members of the SCMC by ticketing them for minor fix-it violations, pulling over members without probable cause, and conducting unwarranted surveillance of members at various public establishments.

27. Plaintiffs are informed and believe, and thereupon allege, that they were denied a TUP for the July 7, 2012 event because of the Defendants' pattern, practice and policy of disapproving of "bikers" in general; discouraging certain entities and groups from holding events within the CITY OF RIO VISTA, and specifically pressuring the SCMC through improper and illegal law enforcement tactics to leave the CITY OF RIO VISTA.

**FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
(Facial Challenge Under 42 U.S.C. § 1983)
(Against All Defendants)**

28. By engaging in the acts alleged herein, specifically denying Plaintiffs a Temporary Use Permit under Rio Vista Municipal Code §17.44.020, the Defendants, acting under color of state law, deprived Plaintiffs of rights, privileges, and immunities secured to them by the Constitution and laws of the United States, including those under the First Amendment to the Constitution, which are incorporated and made applicable to the states by the Fourteenth Amendment. Specifically, by denying Plaintiffs a TUP for the July 7, 2012, public event, Defendants denied Plaintiffs the right to communicate to the public and make the public aware of the existing and proposed laws and regulations that Plaintiffs believe discriminate against motorcyclist and motorcycle clubs. In addition to denying Plaintiffs a public forum to express their political views relating to laws and regulations that effect motorcyclist, Defendants refusal to issue a TUP denied Plaintiffs the opportunity to generate revenue, in the form

of entrance fees, Plaintiffs intended to use to support advocacy groups that advocate for bikers' rights.

29. A statute is "overbroad," violating the First Amendment, if "a substantial amount of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." The Rio Vista Municipal Code §17.44.020 on its face is in fatal conflict with the applicable constitutional provision guaranteeing to the public the right to free speech, and is subject to challenge by Plaintiffs who were denied a Temporary Use Permit pursuant to the provisions of §17.44.020.

30. The Rio Vista Municipal Code §17.44.020 contains no standards designed to be narrow, objective and definite to guide or govern municipal officials of the CITY OF RIO VISTA, including Defendant BOWMAN, in their decisions to grant or deny permits under that section of the Code. Specifically, subsection (A)(2)(b) requires "approval" "from the building division, fire, police and public works departments," but articulates no limits, guidelines, or guidance for the Defendants to follow when exercising their discretion to approve or deny a TUP under the Municipal Code.

31. The Rio Vista Municipal Code contains no guarantee that a Temporary Use Permit will issue even if an applicant meets all of the conditions set forth in §17.44.020, and it fails to provide that a TUP must issue if the time, place and manner of the proposed temporary use are reasonable and suitable.

32. As a result of the lack of standards in the Rio Vista Municipal Code, the Defendants, and each of them, are empowered to deny an application for a TUP for any reason, and when such unfettered discretion was used on July 2, 2012 to deny Plaintiffs' application for a TUP to hold a public event to, among other things, express and promote the rights of motorcyclists, the Defendants violated Plaintiffs' right to free speech and assembly under the First Amendment.

33. Plaintiffs are informed and believe, and thereupon allege, that the portions of the Rio Vista Municipal Code referenced and challenged herein have not been amended, and, therefore there is a real and present danger that the application

and enforcement of these sections of the Municipal Code will significantly impair the First Amendment rights of other individuals and other motorcycle clubs that seek to obtain a TUP from the CITY OF RIO VISTA to hold a public event within the city.

**SECOND CLAIM FOR RELIEF FOR VIOLATION OF DUE PROCESS UNDER THE UNITED STATES CONSTITUTION**
**(Facial Challenge Under 42 U.S.C. § 1983)**
**(Against All Defendants)**

34. By engaging in the acts alleged herein, specifically denying Plaintiffs a Temporary Use Permit under Rio Vista Municipal Code §17.44.020 Defendants, acting under color of state law, deprived Plaintiffs of rights, privileges, and immunities secured to them by the Constitution and laws of the United States, including those under the Due Process Clause of the Constitution, which are incorporated and made applicable to the states by the Fourteenth Amendment.

35. Due process requires that laws and regulations be written with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Otherwise, the statute is void for vagueness.

36. The Rio Vista Municipal Code §17.44.020 contains no standards designed to be narrow, objective and definite, to guide and govern the RIO VISTA city officials, including Defendant BOWMAN, in their decisions to grant or deny permits under that section of the Code. Specifically, subsection (A)(2)(b) requires "approval" "from the building division, fire, police and public works departments." This section lacks any enforceable standards, as these municipal departments are given no limits, guidelines, or guidance when exercising their discretion under the Code.

37. The subsection of Rio Vista Municipal Code §17.44.020 requiring "approval" from these departments is so vague that people of common intelligence must necessarily guess at their meaning and differ as to their application in any given situation, and, therefore, are facially invalid and violate the Due Process Clause of the

United States Constitution. This subsection of the Municipal Code is so standardless that it authorizes and encourages discriminatory enforcement of its terms.

38. As a result of the statute, and specifically Defendants' reliance on the Rio Vista Municipal Code, Defendants' denied Plaintiffs a Temporary Use Permit to hold an event open to the public; thereby, Plaintiffs' civil rights guaranteed to them by the federal constitution were violated as herein alleged.

### THIRD CLAIM FOR RELIEF FOR VIOLATION OF THE FIRST AMENDMENT
### (As Applied Challenge Under 42 U.S.C. § 1983)
### (Against All Defendants)

39. By engaging in the acts alleged herein, specifically applying §17.44.020 of the Rio Vista Municipal Code to deny Plaintiffs a Temporary Use Permit, Defendants, acting under color of state law, deprived Plaintiffs of rights, privileges, and immunities secured to them by the Constitution and laws of the United States, including those under the First Amendment to the Constitution, which are incorporated and made applicable to the states by the Fourteenth Amendment.

40. Specifically, and without limiting the foregoing, the application of the Rio Vista Municipal Code to the circumstances alleged herein, which resulted in the denial of Plaintiffs' application for a Temporary Use Permit, violated Plaintiffs federal civil rights, in so far that it was applied in a manner that gave the Defendants, including BOWMAN and the CITY OF RIO VISTA, unfettered discretion to approve or deny Plaintiffs' request for the permit.

41. By applying the Rio Vista Municipal Code in the manner alleged herein, Defendants were able to deny Plaintiffs' application for a Temporary Use Permit without considering reasonable time, place or manner restrictions.

42. Since Defendants refused to articulate or consider any reasonable time, place or manner restrictions before denying Plaintiffs application for a Temporary Use permit, Plaintiffs were left with no other alternatives for expression or assembly at the desired location.

43. Plaintiffs are informed and believes, and thereupon allege, that the denial was not based on any appropriate time, place or manner concerns, but rather because Defendants CITY OF RIO VISTA, BOWMAN, and the RIO VISTA POLICE DEPARTMENT did not approve of ANDERSON and the SCMC holding an event within the CITY OF RIO VISTA.

44. Plaintiffs are informed and believe, and therefore allege, that Blackwelders Park is routinely rented out to different groups and assemblies up to 35 times a year, and has been the venue for live events with music and appropriately controlled sale and consumption of alcohol.

45. Plaintiffs are informed and believe, and therefore allege, that a Temporary Use Permit is not regularly denied to other groups, whom the Defendants deem suitable, at Blackwelders Park. This demonstrates that the Defendants denied the Temporary Use Permit in this instance arbitrarily and out of animus towards the SCMC organization.

46. Plaintiff ANDERSON, as a member of the SCMC, suffered a violation of his civil rights as a result of Defendants' refusal to issue to SCMC a Temporary Use Permit without just cause.

47. Plaintiffs are informed and believe, and therefore allege, that the Defendants' refusal to issue a Temporary Use Permit to the SCMC was a pattern of impermissible code enforcement, whereby Defendants would refuse to issue such permits to individuals and organizations they deemed unsuitable to hold a public event in the CITY OF RIO VISTA. Plaintiffs, therefore, seek injunctive relief to prevent the future application of the Rio Vista Municipal Code in the manner and means alleged herein.

/ / / / /

/ / / / /

/ / / / /

# FOURTH CLAIM FOR RELIEF FOR VIOLATION OF THE FOURTEENTH AMENDMENT
## (Equal Protection Challenge Under 42 U.S.C. § 1983)
## (Against All Defendants)

48. By engaging in the acts alleged herein, specifically applying §17.44.020 of the Rio Vista Municipal Code to deny Plaintiffs a Temporary Use Permit, Defendants, acting under color of state law, deprived Plaintiffs of rights, privileges, and immunities secured to them by the Constitution and laws of the United States, including those under the Fourteenth Amendment to the Constitution, which guarantees equal protection under the law.

49. Specifically, and without limiting the foregoing, the application of the Rio Vista Municipal Code to the circumstances alleged herein, which resulted in the denial of Plaintiffs' application for a Temporary Use Permit, violated Plaintiffs federal civil rights, in so far that Defendants intentionally treated Plaintiffs differently from other applicants for a TUP that were not motorcycle clubs, and that there was no rational basis for the difference in treatment.

50. By applying the Rio Vista Municipal Code in the manner alleged herein, Defendants were able to deny Plaintiffs' application for a Temporary Use Permit without considering reasonable time, place or manner restrictions.

51. Plaintiffs are informed and believe, and therefore allege, that Defendants do not regularly deny Temporary Use Permits to use Blackwelders Park to other groups who are not motorcycle clubs, but who are otherwise similarly situated in that they use the park to engage in protected speech.

52. Plaintiffs are informed and believes, and thereupon allege, that the denial was not based on any appropriate time, place or manner concerns, but rather was intentionally denied because Defendants CITY OF RIO VISTA, BOWMAN, and the RIO VISTA POLICE DEPARTMENT did not approve of motorcycle clubs, ANDERSON, and the SCMC.

53. As alleged herein, this differential treatment was completely based on illegitimate animus, and there was no legitimate reason for denying the Temporary Use Permit to the SCMC on July 12, 2012.

54. The Defendants' illegitimate animus towards the SCMC was reflected in the statements made on July 2, 2012, by a law enforcement officer employed by the RIO VISTA POLICE DEPARTMENT to an employee of the owner of Blackwelders Park, who stated that there was a problem with the "group" that was attempting to rent the park, likened the group to a biker gang that would invite the Hells Angels, and concluded by stating that the CITY OF RIO VISTA and the RIO VISTA POLICE DEPARTMENT were not going to allow SCMC to have their function. These statements showed the animus of the RIO VISTA POLICE DEPARTMENT to all motorcycle clubs.

55. Plaintiff ANDERSON, as a member of the SCMC, and the SCMC, suffered a violation of their civil rights as a result of Defendants' refusal to issue to SCMC a Temporary Use Permit without just cause.

56. Plaintiffs are informed and believe, and therefore allege, that the Defendants' refusal to issue a Temporary Use Permit to the SCMC was a pattern of impermissible code enforcement, whereby Defendants would refuse to issue such permits to individuals and organizations they deemed unsuitable to hold a public event in the CITY OF RIO VISTA. Plaintiffs, therefore, seek injunctive relief to prevent the future application of the Rio Vista Municipal Code in the manner and means alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief on all claims for relief stated herein:

1. For general, compensatory and special damages of $250,000.00 in favor of the SCMC, and for general, compensatory and special damages of $25,000 for ANDERSON;

    2.    For punitive damages as permitted by law against the individual Defendants;

    3.    For costs of suit, including reasonable attorney fees; and

    4.    For such other relief, including injunctive and/or declaratory relief, as the court may deem proper to prevent Defendants from engaging in the type of unconstitutional conduct alleged herein in the future.

Dated: December 8, 2013

                      WISEMAN LAW GROUP, P.C.

                      By:   /s/ Joseph J. Wiseman
                            JOSEPH J. WISEMAN

                      Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on their claims for relief alleged in the complaint under the United States Constitution.

Dated: December 8, 2013        WISEMAN LAW GROUP, P.C.

                      By:   /s/ Joseph J. Wiseman
                            JOSEPH J. WISEMAN

                      Attorney for Plaintiffs